# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TERRY L. MUNTZERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 09-2447-JWL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error as alleged by Plaintiff, the court ORDERS that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.  Background

Plaintiff applied for DIB and SSI on May 15, 2002 alleging disability since April 24, 2002. (R. 76-78). The applications were denied in proceedings before the

Commissioner, and Plaintiff sought judicial review in the District of Kansas. (R. 20-32, 48-49, 929, 1003-33).[1] In its review, the district court noted that the administrative law judge (ALJ) had determined certain IQ scores reflected in the report of psychologist. Dr. Robert Barnett were not valid and that Plaintiff's condition did not, therefore, meet or equal Listing 12.05. (R. 1008). The court determined substantial evidence does not support the ALJ's determination in that regard (R. 1026), and remanded for the Commissioner to properly consider and discuss additional IQ records contained in Plaintiff's school records, and provide the school records to Dr. Barnett to seek clarification of his opinion whether the IQ scores obtained by Dr. Barnett were valid, and whether Plaintiff had borderline intellectual functioning or mild mental retardation. (R. 1031). On remand the record was developed further, and a video hearing was held before ALJ Bernard A. Trembly on Feb. 11, 2009. (R. 929). Plaintiff appeared at the hearing, represented by counsel. Id., at 929, 937-39. At the hearing testimony was taken from Plaintiff, from a medical expert, from Plaintiff's father and Plaintiff's girlfriend, and from a vocational expert. Id. On April 10, 2009, ALJ Trembly issued a decision finding Plaintiff has not been disabled through the date of the decision, and denying Plaintiff's applications. (R. 929-36).

---

[1] The court is unable to find Plaintiff's applications for SSI in the administrative record, but notes that the "Court Transcript Index" indicates numerous pages are "Not Available for Inclusion in This Administrative Record." (R. ii). Plaintiff does not allege error in this regard, and the previous remand order also reveals that Plaintiff filed both DIB and SSI applications. (R. 1006, 1007).

The ALJ determined Plaintiff has not engaged in substantial gainful activity since his alleged onset date, that he has a severe combination of impairments including mild dysthymia, degenerative joint disease of the right ankle, degenerative disc disease of the lumbar spine, diabetes, and obesity, and that no impairment or combination of impairments meets or medically equals the severity of an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  (R. 930, 935).  He reviewed Plaintiff's allegation of symptoms resulting from his impairments, the record evidence including medical records, and the medical opinions, (R. 930-34), and assessed Plaintiff with the residual functional capacity (RFC) for a range of sedentary work limited to "occasional manipulations² and simple, repetitive tasks in a low stress, nonpublic work environment."  (R. 935).  The ALJ then concluded that Plaintiff is unable to perform his past relevant work, but is able to perform jobs that exist in significant number in the economy–represented by jobs such as "sorter," and "packaging."  Id.  Consequently, the ALJ determined Plaintiff is not "disabled" within the meaning of the Act, and denied his applications.  (R. 936).

Plaintiff requested review by the Appeals Council of the ALJ's decision, and sought thirty additional days "to file suggestions."  (R. 925).  By letter dated June 29, 2009, the Appeals Council granted Plaintiff a thirty-day extension of time to file

---

²The ALJ found that Plaintiff has the RFC for "sedentary work . . . except for more than occasional manipulations."  (R. 935)(emphasis added).  However, in the body of his decision, the ALJ found Plaintiff "would not experience severe or disabling pain at a sedentary level of exertion and occasional manipulations."  (R. 933).  Therefore, the court concludes that the ALJ's ambiguous and somewhat confusing finding reflects a limitation to only occasional manipulations.

exceptions to the ALJ's decision. (R. 921-23). Plaintiff's letter of exception, dated and post marked August 7, 2009, (R. 914-20), was received at the Social Security Administration (SSA) Office of Disability Adjudication and Review, but by letter dated August 12, 2009, the SSA informed Plaintiff that his letter of exception was untimely and that, therefore, the ALJ's decision is the final decision of the Commissioner after remand. (R. 910-13). The SSA informed Plaintiff that he might obtain judicial review of the final decision by filing a civil action with the United States District Court within sixty days after he received the SSA letter dated August 12, 2009. Id. Plaintiff timely filed his complaint seeking judicial review with this court on August 25, 2009. (Doc. 1).

## II.     Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d

799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2009); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id.

at 750-51. If a claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses his RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, he is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

In his brief, Plaintiff claims the ALJ applied the incorrect legal standard to RFC assessment because he: failed to properly consider GAF[3] scores reported in the medical records, picked and chose among Dr. Mintz's opinions, "completely disregarded" the testimony of Plaintiff's lay witnesses, and relied upon the vocational expert's response to

---

[3]Global Assessment of Functioning. A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 1994). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 32. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

a defective hypothetical question. (Pl. Br. 29-36). Therefore, he requests that the Commissioner's decision be reversed, and the case be remanded for an immediate award of benefits. Id., at 37-38. The Commissioner argues the counterpoint to each error alleged by Plaintiff, asserts that substantial evidence on the record as a whole supports the decision, and seeks to have the decision affirmed. (Comm'r Br. 4-15). After discussing an issue raised only in Plaintiff's complaint, the court addresses each error in the order presented in Plaintiff's brief, and finds the Commissioner's decision should be affirmed.

Earlier, Plaintiff sought judicial review in the District of Kansas regarding a previous decision of the Commissioner denying the applications at issue here. On July 24, 2007, Judge Murguia adopted the Report and Recommendation of Magistrate Judge Reid, Muntzert v. Astrue, 502 F. Supp. 2d 1148 (D. Kan. 2007),[4] and entered judgment remanding the case in accordance with the fourth sentence of 42 U.S.C. § 405(g). (R. 1005). As noted above, the court found (R. 1026), substantial evidence did not support the ALJ's determinations that certain IQ scores reflected in the report of psychologist, Dr. Barnett were not valid, and that Plaintiff's condition did not meet or equal Listing 12.05. (R. 1008). It found that the ALJ had erred, and remanded for the Commissioner to properly consider and discuss additional IQ test scores contained in Plaintiff's school records, and to provide the school records to Dr. Barnett to seek clarification of his

---

[4]Copies of the court's order, the judgment, and the Report and Recommendation are contained within the administrative record filed in this case, and all further citation herein will be to the administrative record.

opinion whether the IQ scores obtained by Dr. Barnett were valid, and whether Plaintiff had borderline intellectual functioning or mild mental retardation. (R. 1031). In his complaint here, Plaintiff again asserted in a single sentence that his condition meets Listing 12.05(C), and that he should have been found disabled per se at step three of the sequential evaluation process. (Doc. 1, Complaint, at 2). However, in his brief, Plaintiff does not renew the argument or provide any basis in law or fact for the court to make such a finding. Therefore, the court does not address the issue, because failure to raise an issue in an opening brief waives that issue. Kannady v. City of Kiowa, 590 F.3d 1161, 1175 (10th Cir. 2010); accord, Sanders v. Unum Life Ins. Co of America., 553 F.3d 922, 926 (5th Cir. 2008)("A party waives an issue if he fails to adequately brief it on appeal")(quotation omitted); Burgos v. Barnhart, Civ. A. No. 05-CV-5810, 2007 WL 127730 *4 (E.D. Pa. Jan. 11, 2007)("a party waives any issue not raised in its initial brief")(quotations and brackets omitted).

## III.  Failure to Consider GAF Scores

Plaintiff asserts that the law requires an ALJ to consider, and not ignore, any GAF score of 50 or less contained in the medical records. (Pl. Br. 30-31)(quoting–very loosely–Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004)). He asserts, without pinpoint citation, that he has produced medical records indicating GAF scores of 50 or less on dozens of occasions, but nonetheless, "the ALJ chose to single out only one occasion where Muntzert's GAF score was measured at 65." (Pl. Br. 31). Quoting the Eighth Circuit case of Pate-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009), Plaintiff argues

the ALJ ignored or misinterpreted GAF scores which indicate "marked mental impairments that could substantially impair his ability to work," and therefore the RFC assessed by the ALJ is not supported by substantial evidence, and the decision must be reversed. (Pl. Br. 31-32).

The Commissioner argues that a GAF score is but one piece of evidence to be considered with the record as a whole; that the ALJ in fact noted a GAF score of 50 in addition to a score of 65; and that although an ALJ must discuss any uncontroverted evidence he chooses not to rely upon, the GAF scores at issue are not uncontroverted in this record. He asserts that the ALJ's discussion of the medical records was proper and shows that he considered the GAF evidence in assessing Plaintiff's RFC. The court agrees with the Commissioner.

First, the opinion in <u>Lee v. Barnhart</u> simply does not stand for the proposition asserted by Plaintiff. Plaintiff's brief includes the following block quotation citing <u>Lee</u>:

> Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. <u>For this reason, such a GAF score should not be ignored.</u> <u>Lee v. Barnhart</u>, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

(Pl. Br. 30-31)(emphasis added).

The relevant portion of the opinion in <u>Lee</u>, actually appears as follows:

> Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. <u>Eden v. Barnhart</u>, 109 Fed. Appx. 311, 314 (10th Cir.2004) (unpublished). The

-9-

> claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. Oslin v. Barnhart, 69 Fed. Appx. 942, 947 (10th Cir.2003) (unpublished). <u>In a case like this one, decided at step two</u>, the GAF score should not have been ignored.

Lee v. Barnhart, 117 Fed. Appx. 674, 678, (10th Cir. Dec. 8, 2004)(emphasis added). Counsel is cautioned to use more care in his citation to, and quotation of, legal authority.

It is clear the court in <u>Lee</u> recognized that a low GAF score is merely one piece of evidence which may or may not be particularly important in a given case, dependent on the facts of the case. In <u>Lee</u>, the ALJ determined at step two that plaintiff was not disabled because his impairments were not "severe" within the meaning of the Social Security regulations. <u>Id.</u> 117 Fed. Appx., at 676. In other words, the ALJ determined plaintiff's impairments did "not significantly limit [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a)(defining "Non-severe impairment(s)"). The court in <u>Lee</u> recognized that a GAF score below 50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning" and "does suggest an inability to keep a job." <u>Lee</u>, 117 Fed. Appx. at 678(quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). An inability to keep a job suggests a significant limitation on the ability to do basic work activities, and implies a "severe" impairment. Therefore, the court recognized that in a case decided at step two, as <u>Lee</u> was, a GAF score below 50 should not be ignored. Here, the case was decided at step five, not step two. (R. 935-36). The ALJ here recognized at step two that Plaintiff had a "severe" combination of impairments. (R. 930, 935).

However, although Plaintiff does not cite "dozens of occasions" where his GAF score was recorded as 50 or less, his brief does cite to ten occasions in the record. (Pl. Br. 22-24)(citing (R. 1256, 1269, 1280, 1290, 1355, 1363, 1382, 1490, 1430, 1491)). Each of the below-50 scores cited by Plaintiff was recorded when Plaintiff was voluntarily admitted to psychiatric hospitalization. (R. 1256, 1269, 1280, 1290)(Osawatomie State Hospital, July 5 2006, July 31 2006, Sept. 13 2006, Nov. 25-28 2006); (R. 1355, 1363, 1419, 1430)(Coffeyville Regional Medical Center, Mar. 16 2007, Mar. 26 2007, Oct. 19 2007, Feb. 5 2008); (R. 1382)(Stormont-Vail Regional Medical Center, Aug. 20 2007). The GAF score of 50 cited by Plaintiff was the GAF score assigned by Dr. Mintz in his examination of Plaintiff on December 3, 2008. (R. 1491). As the Commissioner points out in his brief, and contrary to Plaintiff's claim otherwise, the ALJ mentioned another GAF score of 50 assigned by Dr. Mintz on April 3, 2006. (R. 931)(citing Ex. 42F (R. 1318)).

Plaintiff appears to argue that because there were so many instances where he was assigned a GAF score of fifty or below, the ALJ was required to mention the scores, and explain why he did not accord them significant weight. However as the Commissioner suggests, Plaintiff's argument ignores that the GAF scores are not uncontroverted. It is significant that each of the below-fifty GAF scores cited was recorded during one of what the ALJ described as Plaintiff's "multiple voluntary psychiatric admissions each year." (R. 931). The ALJ cited the testimony of the medical expert, psychiatrist Dr. Sherman, that these brief psychiatric hospitalizations are merely a coping mechanism for stress, and

that despite these hospitalizations, the expert testified that Plaintiff experienced no real episodes of decompensation. (R. 932). Moreover, although Dr. Mintz assigned a GAF score of fifty in 2006 and 2008, his reports of his examinations do not indicate that Plaintiff could not work. (R. 1316-18, 1488-91).

The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). As discussed above, in the circumstances present here the GAF scores alluded to by Plaintiff are neither uncontroverted or significantly probative. However, the decision reflects that the ALJ considered all of the evidence. Beyond the ALJ's summarization and discussion of the evidence, he stated four times in one form or another that he had considered the record evidence. (R. 930)("After a thorough review of the evidence of record"); (R. 934)("after careful consideration of all the evidence"); (935)("After careful consideration of the entire record," "5. After careful consideration of the entire record,"). As the Tenth Circuit has stated, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173. Plaintiff has shown no error in the ALJ's consideration of GAF scores.

**IV.    Picking and Choosing Among Dr. Mintz's Medical Opinions**

Plaintiff asserts that the ALJ did not discuss the GAF score of 50 assigned by Dr. Mintz, or Dr. Mintz's opinion that Plaintiff has a "Marked" limitation in the mental ability "to respond appropriately to usual work situations and to changes in a routine work setting." (Pl. Br. 32)(citing R. 1493). He claims that the ALJ improperly selected portions of Dr. Mintz's opinion which were supportive of the determination made while ignoring the GAF score and the "Marked" limitations, thereby erroneously picking and choosing among the opinions. Id. at 32-33. The Commissioner acknowledges that the ALJ did not specifically discuss a "check-the-box form" in which Dr. Mintz indicated "that Plaintiff had generally mild to moderate limitations with a 'marked' limitation in the ability to respond appropriately to usual work situations and to changes in a routine work setting." (Comm'r Br. 10)(citing R. 1493). He argues the failure to specifically discuss Dr. Mintz's form is not error because "Dr. Mintz's assessment did not conflict with the other evidence of record," and the ALJ's discussion of the medical evidence demonstrated a meaningful analysis of the full medical record. Id. The court finds no error.

Plaintiff's brief demonstrates the error in his argument (that the ALJ ignored and failed to discuss Dr. Mintz's GAF score of 50), because Plaintiff quoted the portion of the decision in which the ALJ noted that Dr. Mintz gave Plaintiff "a current past year Global Assessment of Functioning of 50." (Pl. Br. 32)(quoting R. 931). Moreover, as discussed above, the ALJ did not err in his discussion of the GAF scores.

Also as discussed above, Dr. Mintz's reports do not indicate Plaintiff cannot work. As the Commissioner points out, Dr. Mintz's assessment of a single "Marked" limitation was in a "check-the-box" form in which Dr. Mintz assessed Plaintiff with no limitations in one mental ability, "Mild" limitations in four abilities, "Moderate" limitations in four abilities, and "Marked" limitations in only one ability. (R. 1492-93). Plaintiff quoted the ALJ's summary of Dr. Mintz's April 2006 report, the Commissioner points out that the April 2006 and the December 2008 reports are essentially the same, and Plaintiff does not demonstrate how the single "Marked" limitation establishes that the mental RFC assessed by the ALJ is erroneous. The ALJ's RFC finding that Plaintiff is limited to "simple, repetitive tasks in a low stress, nonpublic work environment," appears to specifically accommodate Dr. Mintz's finding that Plaintiff is markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting.

## V.     Lay Witness Testimony

Plaintiff claims the ALJ completely disregarded the testimony of his father and his girlfriend, and argues without citation that "Tenth Circuit law hold [sic] that an ALJ may not disregard lay witness testimony in his decision." (Pl. Br. 33). The Commissioner argues that to the contrary, "an ALJ is not required to make specific written findings of each witness's credibility when the written decision reflects that the ALJ considered the testimony." (Comm'r Br. 11)(citing Blea v. Barnhart, 466 F.3d 903, 914-15 (10th Cir. 2006); and Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996)).

In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The court determined "that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion," and found no error in the ALJ's failure to make specific written findings regarding the testimony. Id. Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings of credibility regarding third-party testimony if the written decision reflects that the ALJ considered the testimony. Blea, 466 F.3d at 915.

Here, as the Commissioner asserts, the ALJ noted in his decision that Plaintiff's father and girlfriend provided testimony. (R. 929). Further, as discussed above he stated four times that he had considered all of the evidence. The ALJ did not completely disregard the testimony, and in accordance with the law of this circuit, he properly considered it. More is not required.

Because Plaintiff has shown no error in the ALJ's evaluation of the GAF scores, in his consideration of Dr. Mintz's opinion, or in his consideration of the lay witness testimony, he has not shown error in the hypothetical question presented to the vocational expert or, consequently, in the ALJ's reliance on the vocational expert's testimony. Therefore, the court finds Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

-15-

Dated this 17th day of September 2010, at Kansas City, Kansas.

> s/ John W. Lungstrum
> **John W. Lungstrum**
> **United States District Judge**